

**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD**

FILED
Mar 03, 2026
12:51 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

| | |
|---|---|
| Thaddeus Forrest | Docket No. 2025-60-3186 |
| v. | State File No. 21779-2025 |
| Concrete Structures, Inc., et al. | |
| Appeal from the Court of Workers' Compensation Claims Joshua D. Baker, Judge | Heard February 12, 2026 in Knoxville, Tennessee |

---

**Affirmed in Part, Reversed in Part, Modified in Part, and Remanded**

---

The employer questions the trial court's award of medical and temporary disability benefits in this interlocutory appeal. The employee suffered a fracture to his left femur when a structure fell on him at work. While undergoing treatment for that injury, his medical providers determined the employee had a cancerous lesion at the fracture site and diagnosed him with plasma cell neoplasm. The employer initially denied the compensability of the injury, arguing that the primary cause of the fracture was the employee's preexisting cancer weakening his femur and not the incident at work. Following an expedited hearing, the court awarded medical benefits for the femur fracture, including chemotherapy and radiation recommended by the employee's orthopedic oncologist, as well as temporary disability benefits. The trial court also denied the employee's counsel's request for attorneys' fees at that stage of the case. Both parties have appealed. Having carefully reviewed the record, we affirm the trial court's award of temporary disability benefits, its award of medical benefits, as modified, for treatment reasonably necessitated by the employee's injury, and its denial of attorneys' fees at this stage in the litigation. We reverse the portion of the order requiring the employer to provide a panel of oncologists for oncological treatment and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Benjamin T. Norris, Nashville, Tennessee, for the employer-appellant, Concrete Structures, Inc.

Peter P. Frech, Nashville, Tennessee, for the employee-appellant, Thaddeus Forrest

1

## Factual and Procedural Background

Thaddeus Forrest ("Employee") was working for Concrete Structures, Inc. ("Employer"), on April 2, 2025, when a metal and plywood structure fell on him. Employee was taken via ambulance to Williamson Medical Cener, where he was diagnosed with a fractured left femur. Employee was then transported to TriStar Skyline Medical Center for treatment of the fracture. At that time, medical providers noted an unusual lesion at the fracture site. Employee was again transferred, this time to Centennial Medical Center, where he was evaluated by Dr. Ginger Holt, an orthopedic oncologist. Dr. Holt diagnosed a "pathological fracture of the femur due to neoplastic disease." She performed surgery the following day, which included repairing the fracture, inserting hardware, and removing the lesion. A biopsy confirmed the presence of myeloma, or plasma cell neoplasm. Following the surgery, Dr. Holt referred Employee to Tennessee Oncology Center for further treatment. A PET scan confirmed the presence of plasma cell neoplasm in Employee's collarbone, as well as likely lung cancer. Employee continued to treat at Tennessee Oncology, and Dr. Jeffrey Friedman diagnosed him with Stage IV lung cancer on June 18, 2025, "causing pathologic fracture." Dr. Friedman stated the primary cancer was the lung cancer, which had metastasized to the bone, including the left femur, resulting in weakening and fracturing of the bone. Employee underwent radiation for the lesions on both his femur and his collarbone, which was completed on August 13, 2025.

In response to Employee's claim, Employer obtained a records review from Dr. Robert Holladay, an orthopedic surgeon in Louisiana. In a report dated April 25, 2025, Dr. Holladay opined that the femur fracture was "primarily attributed to the preexisting malignant process." Based on the treatment records and Dr. Holladay's report, Employer denied Employee's claim on April 29, 2025, stating "the condition is not greater than [fifty percent] causally related." Employee filed a petition for benefit determination on May 16, 2025, seeking "medical treatment for the work injuries caused by the concrete wall falling on me, as well as attorney[s'] fees for the denial and delay of care."

On July 31, 2025, Dr. Holt responded to a questionnaire received from Employee's counsel. Dr. Holt marked "[y]es" in response to the question "in your professional medical opinion, do you agree that [Employee's] left femur fracture injuries primarily arose out of his workplace accident, which occurred on April 2, 2025?" The questionnaire also asked that she "indicate what (if any) medical treatment, testing[,] and/or evaluation(s) you would recommend for [Employee's] left femur fracture at this time." Dr. Holt wrote "[s]urgical [f]ixation" and "physical therapy." In response to another question, Dr. Holt marked that the recommended medical treatment did arise primarily out of the "workplace accident . . . on April 2, 2025." Dr. Holt also marked "[y]es" in response to the question "do you agree [Employee's] left femur fracture injuries preclude him from working whatsoever from the date of injury . . . to the present, and ongoing, until you opine otherwise?"

2

Employee filed a request for expedited hearing and a supporting affidavit, specifically seeking temporary disability ("TTD") benefits and ongoing medical care to be provided by Dr. Holt. In preparation for the expedited hearing, Employer deposed Dr. Holt in September 2025, who testified that there "was a greater than fifty percent chance" the structure falling on Employee "contributed to" Employee's fracture. Noting that Employee had no symptoms associated with the lesion prior to the work accident, Dr. Holt testified that although the lesion contributed to the fracture, the bone would not have broken without the force of the structure falling on Employee. In regard to further medical care, Dr. Holt testified she would not be treating the cancer and that Employee would need further care provided by a medical oncologist. The following exchange then occurred:

Q:      [A]s far as what the additional treatment is at this point, what does [Employee] need?

A:      Usually[,] there's a line of chemotherapy[,] potentially, that patients would get and possibly radiation to the bone.

Q:      And is that treating the cancer[,] or is that treating the fracture?

A:      Cancer.

Q:      Okay. What is the additional treatment needed for the fracture?

A:      Radiation therapy. Well, both are needed because the bone can't heal if there's cancer in the bone. So[,] if the cancer can make a lytic lesion, the bone, it can continue to do so if the last bit of cancer isn't treated.

Q:      So[,] if [Employee] hadn't had the cancer in there, the treatment would be [] physical therapy, just like a normal orthopedic injury. Right?

A:      In theory, yes.

Q:      Okay. And because the cancer is there, the specialized care is needed. That includes physical therapy.

A:      The chemotherapy and medical oncology are the specialized care that [Employee] needs.

Employee was the only witness to testify live at the expedited hearing. In an order issued October 22, 2025, the trial court accredited Dr. Holt's expert opinion over that of Dr. Holladay's and awarded temporary total disability benefits "from April 17, 2025,

3

through the date of this order" and ongoing, as well as future medical benefits with an oncologist selected from a panel of specialists for any "reasonable and necessary treatment for this injury under [Tennessee Code Annotated section] 50-6-204."[1] Although the court awarded Employee's counsel an attorneys' fee equal to twenty percent of the accrued TTD benefits, it declined to award any further fees for Employer's purported unreasonable denial pursuant to Tennessee Code Annotated section 50-6-226(d)(1)(B), stating such fees should only be awarded at an interlocutory stage in "extremely limited circumstances," which it found did not exist in this case. Both parties have appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

## Analysis

Employer contends the court made two errors on appeal. First, Employer alleges that the trial court erred in ordering it to provide treatment with an oncologist.[2] Second,

---

[1] In the concluding sentence of the section of the order entitled "Additional [T]reatment," the trial court stated that Employer "must provide [Employee] a panel of oncologists." However, on page 5 of the order, the trial court ordered Employer to provide Employee "a panel of *orthopedic* oncologists from which he may select a treating physician." Given that Dr. Holt is the orthopedic oncologist who performed surgery to repair Employee's fractured femur and who testified that Employee needed oncological treatment moving forward, it is unclear which kind of specialist Employer was ordered to provide.

[2] In footnote 7 of its brief on appeal, Employer conceded that the femur fracture was primarily caused by the work-related accident, and it has paid TTD benefits "from the date of injury through June 2, 2025."

4

Employer argues that TTD benefits should not be awarded for the entire period ordered by the court because, in its view, all treatment after June 2, 2025 was related to Employee's preexisting cancer. In his notice of appeal, Employee raises the following issues: (1) whether the trial court should have designated Dr. Holt as the authorized treating physician; (2) whether attorneys' fees should have been awarded at the expedited hearing; and (3) whether Employer's appeal is frivolous.[3]

*Oncological Treatment*

It is undisputed that Employee needs chemotherapy and radiation to treat his cancer. The critical issue in this appeal is whether Employer is obligated to provide oncological treatment for the work-related injury. The only testifying physician in this case, Dr. Holt, indicated the oncological treatment could, in addition to treating the cancerous lesions, help the fractured bone to heal. It is well settled that "[t]he employer . . . shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Tenn. Code Ann. § 50-6-204(a)(1)(A) (2025). The threshold inquiry here is whether oncological treatment was made reasonably necessary by the fracture. We conclude Dr. Holt's testimony falls short of the proof needed to meet Employee's burden at the expedited hearing.

In the present case, the trial court ordered Employer to provide a panel of medical specialists based, in part, on its analysis of our opinion in *Edwards v. Peoplease, LLC*, No. 2020-07-0656, 2024 TN Wrk. Comp. App. Bd. LEXIS 23 (Tenn. Workers' Comp. App. Bd. July 2, 2024), a case that raised issues concerning a preexisting condition, a subsequent injury, and the primary cause of the need for medical treatment.[4] The critical question in *Edwards* was whether the employer was responsible for authorizing total knee replacements in circumstances where the employee had severe preexisting osteoarthritis that was allegedly aggravated or advanced by the work accident. *Id.* at *14. The Tennessee Supreme Court concluded that the employer was responsible for that treatment because the work accident advanced the employee's preexisting osteoarthritis by making the condition symptomatic. *Id.*

Here, there is no allegation that the work accident aggravated, accelerated, or advanced Employee's cancer. Instead, Employee asked the trial court to compel Employer to authorize treatment Dr. Holt believes will promote healing of the fractured bone while also treating the non-work-related cancer. Thus, we conclude the rationale expressed in

---

[3] Employee did not argue Employer filed a frivolous appeal in his appellate brief or at oral argument. Accordingly, we treat the issue as having been waived by Employee. *See Moore & Seiferth v. Ingles Markets, Inc.*, Nos. 2015-02-0183, 2015-02-0193, 2015 TN Wrk. Comp. App. Bd. LEXIS 54, at *4 (Tenn. Workers' Comp. App. Bd. Nov. 4, 2015).

[4] *Edwards* was appealed to the Tennessee Supreme Court, which issued its opinion after the trial court issued its order in this case. *See Edwards*, 2025 Tenn. LEXIS 514, at *18.

*Edwards* does not address the pertinent issue in this case. Instead, we must determine whether Employee has come forward with sufficient proof that the additional oncological treatment recommended by Dr. Holt was "made reasonably necessary" by the work-related accident. At this stage of the case, we conclude he has not.

We also note that both parties relied on the Supreme Court's opinion in *Rogers v. Shaw*, 813 S.W.2d 397 (Tenn. 1991). In *Rogers*, the employee contracted lung cancer due to his occupational exposure to asbestos. *Id.* at 398. The treating physician determined that the employee's left lung must be removed; however, the employee also suffered from a significant arterial blockage caused by an underlying cardiac condition. *Id.* Mr. Rogers's physician determined that he would need to undergo a coronary bypass before he could undergo the lung removal surgery. *Id.* Tragically, Mr. Rogers suffered a stroke during his bypass surgery and later died. *Id.* His widow filed for death benefits under Tennessee's Workers' Compensation Law, which the trial court denied. *Id.* at 399. On appeal, the Supreme Court awarded death benefits, concluding that the bypass surgery was "reasonably required" as a prerequisite to the removal of Mr. Rogers's cancerous lung pursuant to the relevant language in Tennessee Code Annotated section 50-6-204(a)(1)(A). *Id.* at 400.

We conclude *Rogers* is inapposite here for several reasons. First, *Rogers* was decided before the effective date of the 2013 Workers' Compensation Reform Act ("Reform Act"). Second, all testifying experts in *Rogers* agreed the bypass surgery was "reasonably required" before Mr. Rogers's lung could be removed, which was the statutory standard in place for medical treatment at the time. *Id.* In the present case, there is no evidence that the oncological treatment Employee needs for his cancer is necessary as a prerequisite to the treatment of his fractured femur. Third, there is no expert medical proof in this case indicating that the need for oncological treatment is primarily related to the fractured femur. Although Dr. Holt completed a questionnaire in July 2025 stating the fracture arose primarily out of the work injury and primarily caused Employee's need for surgical fixation and physical therapy, additional treatments, including radiation and chemotherapy, were not addressed in the questionnaire. Indeed, the first discussion of chemotherapy or radiation as a possible treatment to aid in the healing of the fracture was during Dr. Holt's deposition, taken the month after the medical records indicate Employee completed his radiation treatments and over four months after she last examined him.

As an appellate tribunal, we are "as well situated to gauge the weight, worth[,] and significance of deposition testimony as the trial judge." *Johnson v. Marshall Mfg. Corp*, No. M2003-00921-WC-R3-CV, 2004 Tenn. LEXIS 153, at *4 (Tenn. Workers' Comp. Panel. Mar. 4, 2004) (internal citation omitted). The Supreme Court in *Edwards* recently reiterated this standard, explaining that "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations, because all impressions of weight and credibility must be drawn from the contents thereof." *Edwards*, 2025 Tenn. LEXIS 514, at *18 (internal citation and quotation marks omitted).

6

Here, Dr. Holt initially testified the oncological treatment she recommended was for the cancer, but she then suggested it could also help Employee's fractured bone to heal. However, she offered no direct testimony to support a finding that the oncological treatment was "made reasonably necessary" by the work accident. As such, we conclude the trial court erred in ordering Employer to provide additional oncological treatment based on the expert medical evidence presented to date.

*TTD Benefits*

The trial court awarded TTD benefits to Employee based on Dr. Holt's questionnaire responses and testimony stating Employee's femur fracture prevents him from working. Prior to this appeal, Employer asserted it has paid TTD benefits from the date of injury through June 2, 2025, which is when Employee began his oncological treatment. Employer argues that Employee's cancer treatment has superseded the work-related accident as the primary cause of Employee's temporary disability preventing him from returning to work.

As we have noted previously, "[a]n injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015). "Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery." *Id.*

In the present case, Employee testified that he has been unable to work since the accident that caused his femur fracture. In addition, Dr. Holt affirmed that Employee's "left femur fracture injuries preclude him from working whatsoever" in her responses to the July 2025 questionnaire sent by Employee's counsel, and Dr. Holt testified in September that her previous responses to the questionnaire were still true. There is no proof in the record Employee was able to return to work following the work accident or that he has attained maximum medical improvement from the work-related femur fracture. Further, Employer had the opportunity to question Dr. Holt regarding her assignment of work restrictions and the basis for those restrictions during her deposition, but it did not do so. Therefore, we conclude the evidence does not preponderate against the trial court's award of past and ongoing TTD benefits at this stage of the case.

*Ongoing Medical Care for Work-Related Injury*

Next, Employee appealed the trial court's order compelling Employer to provide a panel of three orthopedic oncologists rather than ordering continuing treatment with Dr. Holt as his authorized physician. As discussed above, we have concluded Employee has not met his burden of establishing entitlement to additional oncological treatment,

including chemotherapy and radiation, based solely on Dr. Holt's testimony. However, it is now undisputed that Employee sustained an accident at work primarily causing a femur fracture. Hence, Employee remains entitled to any medical care "made reasonably necessary" by the work-related accident "as defined in this chapter." Tenn. Code Ann. § 50-6-204(a)(1)(A).

During oral argument, the attorneys for both parties stated that Dr. Holt was, to their knowledge, the only orthopedic oncologist available to treat workers' compensation patients in Employee's geographical area. Furthermore, there is no indication in the record as to whether Employee has undergone the physical therapy prescribed by Dr. Holt or whether there is other orthopedic treatment reasonably necessitated by Employee's work-related fracture. Employer did not provide a panel of physicians at the outset of the claim and, by declining to do so, was at "risk of having to pay the reasonable cost for treatment of the employee's injuries by a physician of the employee's choice." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *14 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015) (internal citation omitted). Moreover, once an injured worker has formed a doctor-patient relationship with a treating physician in circumstances where the employer declined to authorize treatment, the employer is in no position to insist on the provision of a panel after the fact. *See, e.g.*, *Young v. Young Elec. Co.*, No. 2015-06-0860, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *18-19 (Tenn. Workers' Comp. App. Bd. May 25, 2016). Under these circumstances, we conclude Employee can return to Dr. Holt for any additional medical care made reasonably necessary by his work-related fracture as outlined above.

*Attorneys' Fees*

Finally, Employee contends the trial court erred in declining to award attorneys' fees for an unreasonable denial of the claim at this interlocutory stage of the litigation pursuant to Tennessee Code Annotated section 50-6-226(d)(1)(B). As we have stated previously,

> Given the uncertainties inherent in litigation, the limited issues typically addressed at expedited hearings, the fact that discovery and medical proof often are incomplete at an interlocutory stage of a case, the standard of proof that applies at expedited hearings, and the fact that a trial judge's determinations at an interlocutory hearing are subject to change at any time prior to the entry of a final compensation hearing order, a decision to award attorney[s'] fees and expenses at an interlocutory stage of a case should be made only in extremely limited circumstances.

*Thompson v. Comcast Corp.*, No. 2017-05-0639, 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *28-29 (Tenn. Workers' Comp. App. Bd. Jan. 30, 2018). We agree with the trial

court, especially given the complicated and unique nature of the disputed medical issues, that an award of attorneys' fees at this stage of the litigation is inappropriate.

## Conclusion

For the foregoing reasons, we reverse the portion of the trial court's order finding Employee is likely to prove at trial that his need for oncological treatment, including radiation and chemotherapy, was "made reasonably necessary" by the work accident. We affirm the award of TTD and medical benefits, but we modify the trial court's order to allow Employee to return to Dr. Holt for any other orthopedic treatment made reasonably necessary by the work accident. Finally, we affirm the court's decision not to award attorneys' fees at this stage of the case. Costs on appeal are taxed to Employee.